**FASHION PLACE INVESTMENT, LTD., a partnership, aka Fashion Place Associates, Fashion Place Investors Ltd., a limited partnership, Capitol Life Insurance Company, Valley Mortgage Company, Dr. Robert Anderson, Dr. Barlow L. Packer, Dr. Orlando T. Barrowes, Dr. Carlson Terry, Plaintiffs and Appellants,**

v.

**SALT LAKE COUNTY/SALT LAKE COUNTY MENTAL HEALTH, et al., Defendants and Respondents.**

**SALT LAKE COUNTY/SALT LAKE COUNTY MENTAL HEALTH, et al. Third–Party Plaintiffs,**

v.

**Richard HARMAN, d/b/a Building Management Services, and Safeco Insurance Company, et al., Third–Party Defendants.**

No. 870553–CA.

Court of Appeals of Utah.

June 26, 1989.

Theodore E. Kanell, John N. Braithwaite, Salt Lake City, and I. Franklin Hunsaker, and Dianne K. Ericsson, Portland, Or., for plaintiffs and appellants.

Ralph D. Crockett, Gary B. Ferguson, and Gary L. Johnson, Salt Lake City, for defendants and respondents.

Before DAVIDSON, BENCH, and ORME, JJ.

## OPINION

DAVIDSON, Judge:

This appeal involves a dispute between Salt Lake County Mental Health (Salt Lake County), as tenant, and Safeco Insurance Company (Safeco), as the landlord's insurer, in a subrogation claim for damages resulting from a fire that destroyed the leased premises. The trial court found that Salt Lake County was an implied coinsured under the terms of the lease thereby barring subrogation by Safeco. Safeco, in the name of the landlord, Fashion Place Investors (Fashion Place), appeals from summary judgment granted in favor of Salt Lake County. We affirm.

## FACTS

In 1978, Salt Lake County leased office space in the Fashion Place Professional Building (Building). Four years later, Fashion Place Investors purchased the Building and Salt Lake County negotiated a new lease. The new lease provided that

it was the landlord's responsibility to obtain fire insurance on the Building. Accordingly, Fashion Place obtained insurance coverage through Safeco. In addition, Safeco insured, through separate individual policies, several tenants in the Building. These tenants were not parties to the lease with defendant.

On May 1, 1983, a fire destroyed the Building. Safeco paid Fashion Place and the individual tenants for the loss pursuant to its insurance policies, and then commenced a subrogation action against Salt Lake County contending that Salt Lake County, acting through its employees, negligently caused the fire. Salt Lake County argued that it is an implied coinsured of Safeco, which precludes Safeco from exercising its subrogation claim.

The trial court initially denied Salt Lake County's motion for summary judgment. Although the court agreed that Salt Lake County was presumed a coinsured, and that an insurer is barred from pursuing any claims against its insured, the material issue of fact remaining was whether Salt Lake County and Fashion Place had expressly contracted that Salt Lake County would assume responsibility for fire damage resulting from its negligence. Because the trial court concluded that the provisions in the lease were ambiguous, extrinsic evidence was required to determine the parties' intent. Following discovery, Salt Lake County filed another motion for summary judgment. The court determined from the affidavits and depositions that the parties did not expressly intend to contract around the presumption that Salt Lake County was a coinsured. Furthermore, the court ruled that certain paragraphs in the lease constituted pre-loss releases by Fashion Place of any subrogation claims that Safeco may have had as a result of the fire.

Fashion Place argues on appeal that the trial court erred in ruling that Salt Lake County is a coinsured of the landlord. Fashion Place contends that a lease provision requiring the landlord to provide fire insurance does not by itself expressly or impliedly exempt the tenant from the financial consequences of its own negligence.

## STANDARD OF REVIEW

In reviewing a summary judgment, we analyze the facts and inferences in the light most favorable to the losing party. *Atlas Corp. v. Clovis Nat'l Bank*, 737 P.2d 225, 229 (Utah 1987). Because summary judgment is granted as a matter of law, we review the trial court's conclusions of law for correctness. *Id.* If a trial court interprets a contract as a matter of law, that interpretation is not afforded any particular deference on appeal. *Power Sys. & Controls, Inc. v. Keith's Elec. Constr. Co.*, 765 P.2d 5, 9 (Utah App.1988). However, if the contract is ambiguous and the trial court makes findings of fact from extrinsic evidence, this court's review is strictly limited. *Copper State Leasing Co. v. Blacker Appliance & Furniture Co.*, 770 P.2d 88, 90 (Utah 1988). Correspondingly, if the contract is ambiguous, but the case is decided on summary judgment, we can affirm only if the undisputed material facts, concerning the parties' intent, demonstrate the successful litigant's position is correct as a matter of law. Utah R.Civ.P. 56(c).

■ The threshold question of whether or not a lease is ambiguous is itself a question of law. *Seashores Inc. v. Hancey*, 738 P.2d 645, 648 (Utah App.1987) (Orme, J., concurring). *See also Faulkner v. Farnsworth*, 665 P.2d 1292, 1293 (Utah 1983). Thus, we must determine, as a matter of law, whether the lease is ambiguous before we determine whether it was even necessary to resort to extrinsic factual evidence in this case. *Id.*

■ The pivotal sections of the lease provide:

7. At the expiration of the term of this lease, LESSEE will yield and deliver up the PREMISES to LESSOR in as good order and condition as when the same were entered upon by the LESSEE, reasonable use and wear thereof, *damage by fire and casualty not the fault of LESSEE* and damage by elements excepted therefrom.

9. Responsibility for utilities, taxes and insurance shall be as indicated: Power (L), Heat (L), Water (L), Sewer (L), Telephone (T), Real Property Tax (L), Increase in Real Property Tax (L), *Fire Insurance on Building (L)*, *Fire Insurance on Personal Property (L)*, Glass Insurance (L). [L stands for landlord, T for tenant.]

(Emphasis added.) Although these provisions may seem inconsistent, they actually are not. In paragraph 7, the parties agree that, as between themselves, the tenant bears the loss for damage resulting from fires which are its fault. However, in paragraph 9, the parties agree to relieve the tenant from the practical risk posed by that legal responsibility through the device of fire insurance provided by the landlord. This interpretation is consistent with the modern trend, as adopted by numerous jurisdictions in recent years, *see e.g. Alaska Ins. Co. v. RCA Alaska Communications, Inc.*, 623 P.2d 1216, 1218 n. 1 (Alaska 1981), to deny a cause of action to landlords and the right of subrogation to their insurers, when the landlord covenants to carry fire insurance on the leased premises. This includes instances where the lease contains provisions ostensibly holding the tenant responsible for fires caused by its own negligence. *Id.*

Recently, this court decided a similar dispute in *Pickhover v. Smith's Management Corp.*, 771 P.2d 664 (Utah App.1989). In *Pickhover*, the issue on appeal was whether the insurance provision of a purchase agreement required the buyer to insure the seller against the financial consequences of its own negligence. *Id.* at 666. *Pickhover* addressed two aspects of the typical agreement to provide insurance, both of which cast doubt on the modern day applicability of the "strict construction" rule to such agreements.[1] The aspect discussed that is the most pertinent to this case is the protection of the bargained-for expectations of the parties.

An agreement to insure is an agreement to provide both parties with the benefits of insurance. Individuals understand that insurance will protect them against the consequences of their own negligence and more than likely assume that if one ... agrees as part of his or its [contractual] duties to provide insurance, that the insurance will protect both of them *regardless of the cause of the loss....* If that were not their intent, each would provide his or its own protection....

*Id.* at 669 (quoting *South Tippecanoe School Bldg. v. Shambaugh & Son, Inc.*, 182 Ind.App. 350, 395 N.E.2d 320, 327 (1979)) (emphasis added). Since Fashion Place agreed to provide insurance for the benefit of its tenant, Salt Lake County, we hold that the strict construction rule does not apply, but instead, we follow the modern trend and conclude that the lease clearly imposes the responsibility for providing fire insurance on the landlord.

## SUBROGATION AGAINST A COINSURED

We next examine whether Safeco, nevertheless, has a right of subrogation against Salt Lake County. The equitable doctrine of subrogation allows an insurer, which has paid a loss, to step into the shoes of its insured and recoup its losses from a party whose negligence caused the loss. *Board of Educ. v. Hales*, 566 P.2d 1246, 1247 (Utah 1977). However, it is a well-established rule that an insurer cannot recover by means of subrogation against its own insured or a coinsured under the policy. *Aetna Ins. Co. v. Craftwall of Idaho, Inc.*, 757 F.2d 1030, 1031 (9th Cir.1985); *Alaska Ins. Co.*, 623 P.2d at 1217; *Sutton v. Jondahl*, 532 P.2d 478, 482 (Okl.App.1975); *Board of Educ.*, 566 P.2d at 1247. "An insurer which accepts a premium based partially on the inclusion of a coinsured under a policy of insurance has assumed the risk of [the coinsured's] negligence." *Board of Educ.*, 566 P.2d at 1247. Where

1. In essence, the strict construction rule provides that where one party has allegedly contracted to assume responsibility for the financial consequences of another's negligence, the provisions of the contract must be strictly construed against such coverage absent clear and unequivocal language. *See e.g., Shell Oil v. Brinkerhoff–Signal Drilling Co.*, 658 P.2d 1187 (Utah 1983).

the insured is required by contract or lease to carry insurance for the benefit of another, the other party may attain the status of a defacto coinsured even if not named as an insured in the policy obtained. 16 Couch on Insurance 2d § 61:137 (Rev.Ed. 1983). In the absence of a design or fraud on the part of the coinsured, no subrogation may be taken against such party. *Id.* Furthermore, an insurer-subrogee stands in the shoes of its insured and any defenses that are valid against the insured are also valid against the insurer. *Id.* at § 61:212. Therefore, if the tenant is a coinsured under the landlord's policy, the insurer has no right of subrogation against it.

> In this context, an insurer should not be allowed to treat a tenant, who is in privity with the insured landlord, as a negligent third party when it could not collect against its own insured had the insured negligently caused the fire. In effect, the tenant stands in the shoes of the insured landlord for the limited purpose of defeating a subrogation claim.

*Rizzuto v. Morris,* 22 Wash.App. 951, 592 P.2d 688, 690 (1979).

 The tenant also stands in the shoes of the insured landlord for purposes of subrogation claims brought in the names of tenants not parties to the lease. When Safeco agreed to provide insurance for the building it assumed the risk of its coinsureds' negligence. *See Board of Educ.,* 566 P.2d at 1247. "The insurer, which has accepted one premium covering the entire property and has assumed the risk of the negligence of each insured party, ought not to be allowed to shift the risk to any one of them." *Id.* at 1248 (quoting *McBroome–Bennett Plumbing, Inc. v. Villa France Inc.,* 515 S.W.2d 32, 44 (Tex.Civ.App.1974) (Guittard, J., dissenting)).

### CONCLUSION

We hold that the lease is not ambiguous and that Salt Lake County is a "coinsured" under its provisions. Fashion Place included Salt Lake County within the scope of insurance coverage called for under the lease. Therefore, Safeco has no right to pursue a subrogation claim against Salt Lake County.

Accordingly, the judgment below is affirmed.

BENCH and ORME, JJ., concur.