Joseph **MORELAND**, Jr., Appellant,

v.

Helen Marie **FARREN–DAVIS**, et al., **Respondent.**

No. WD 58536.

Missouri Court of Appeals, Western District.

March 27, 2001.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 1, 2001.

Application for Transfer Sustained June 26, 2001.

Case Retransferred Oct. 23, 2001.

Court of Appeals Opinion Readopted Oct. 29, 2001.

---

Patrick Joseph Berrigan, Kansas City, for appellant.

Jill Ellen Frost, Kansas City, for respondent.

Before Presiding Judge LAURA DENVIR STITH, Judge SMART, and Judge HOWARD.

LAURA DENVIR STITH, Presiding Judge.

Plaintiff–Appellant Joseph Moreland appeals the trial court's grant of summary judgment to his landlord, Defendant–Respondent Helen Marie Farren–Davis, on Mr. Moreland's claim for injuries arising out of a fight he had with Ramon Gonzales, that occurred next door to Ms. Farren–Davis' property. The trial court held that Ms. Farren–Davis owed no duty to Mr. Moreland to protect him from injuries sustained on another's property and that no special relationship existed that would have imposed such a duty on Ms. Farren–Davis to protect her tenants from criminal acts of a third party off of her property. We agree and affirm grant of summary judgment to Ms. Farren–Davis.

Mr. Moreland also argues on appeal that the trial court did not address his claim that Ms. Farren–Davis was negligent in hiring Mr. Gonzales. Because Mr. Moreland never pled that Mr. Gonzales was an employee of Ms. Farren–Davis, Mr. Moreland cannot now claim that she was negligent in hiring and retaining Mr. Gonzales as an employee or that the trial court erred in failing to reach that issue. Affirmed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Ms. Farren–Davis owns an apartment building at 3932 Terrace. Her stepson, William Davis (William), and his wife, Karen Davis (Karen) own the adjacent building at 3928 Terrace. Mr. Moreland was a tenant in Ms. Farren–Davis' building at 3932 Terrace in 1992. At various times, Ramon Gonzales also resided at 3932 Terrace, rent-free, in return for doing general repair work on that premises. The parties dispute whether he was still living there at the time of the incident in question.

On September 13, 1992, William and Karen Davis were working on a lawnmower in their garage on their property at 3928 Terrace when Mr. Moreland walked over from next door and stood by them. Mr. Moreland was standing in the garage when Ramon Gonzales came onto the property, upset and allegedly intoxicated. He and Mr. Moreland got into a fight, during which Mr. Gonzales stabbed Mr. Moreland, perforating his stomach, ureter, and large intestine. The wound became severely infected and resulted in two surgeries, six weeks of hospitalization, and permanent injuries to Mr. Moreland. Mr. Gonzales was ultimately arrested and charged with assault in the first degree. On October 7, 1992, Mr. Gonzales pled guilty and was sentenced to a ten-year suspended sentence and four years of probation.

On August 20, 1996, Mr. Moreland filed a Petition in the Circuit Court of Jackson County both against his landlord, Ms. Farren–Davis, and against his neighbors, Wil-

liam and Karen Davis, in which he sought damages for his injuries resulting from the stabbing. Mr. Moreland contended that Ms. Farren–Davis had a maintenance agreement that specifically included terms requiring Mr. Gonzales to paint both the apartments, mow the lawns, and perform minor cleaning and repair work on her property and the Davises' property. Mr. Moreland also alleged that Ms. Farren–Davis and William and Karen Davis knew or should have known, prior to the stabbing, that Mr. Gonzales was dangerous and that they should have taken measures to prevent Mr. Moreland from being stabbed by Mr. Gonzales. Accordingly, Mr. Moreland contended that Ms. Farren–Davis and William and Karen Davis were jointly and severally liable: 1) in failing to protect him from Mr. Gonzales; 2) in failing to exclude Mr. Gonzales from the premises before the attack; and 3) in failing to adequately screen tenants. Although Mr. Moreland did not allege that Mr. Gonzales was an employee of Ms. Farren–Davis, he nonetheless also alleged that she was jointly and severally liable with William and Karen: 1) in failing to adequately screen employees; and 2) in hiring Mr. Gonzales.

On September 26, 1997, Ms. Farren–Davis filed a Motion for Summary Judgment. In her motion, she admitted that Mr. Gonzales was a former tenant at 3932 Terrace, but she denied that he was a tenant at the time of the stabbing. She also admitted that Mr. Gonzales had previously performed various tasks for her in exchange for a reduction in his rent. She denied that William and Karen managed her apartment building, and she claimed that all times relevant to the cause of action, she neither owned nor had possession or control of the property located at 3928 Terrace, where the attack on Mr. Moreland occurred. Rather, she claimed, William and Karen Davis owned, pos-

sessed and controlled the 3928 Terrace property. As such, Ms. Farren–Davis contended, she owed Mr. Moreland no duty to protect him from the injuries he sustained on another's property, and none of the special facts or relationships that sometimes make a landlord liable for criminal acts of third persons on the landlord's property applied. William and Karen Davis also filed a separate Motion for Summary Judgment, which is not at issue on this appeal.

In his response to Ms. Farren–Davis' Motion for Summary Judgment, Mr. Moreland claimed that genuine issues of material fact existed, which required denial of summary judgment. He claimed that there were questions of fact as to whether Ms. Farren–Davis exercised some control over the premises at 3928 Terrace; whether Mr. Gonzales was her tenant at the time of the stabbing; and whether Ms. Farren–Davis was aware that Mr. Gonzales had previously committed violent acts. The trial court found that, as a matter of law, Ms. Farren–Davis and William and Karen Davis were entitled to summary judgment and that they did not owe a duty to Mr. Moreland to protect him from the criminal acts of Mr. Gonzales.

Mr. Moreland appealed the trial court's judgment to this Court. *See Moreland v. Farren–Davis*, 995 S.W.2d 512 (Mo.App. W.D.1999). We dismissed the appeal because the judgment entered by the trial court was not final, in that it failed to dispose of all claims and was not certified as final for purposes of immediate appeal under Rule 74.01(b), stating:

[T]he summary judgment entered by the trial court did not completely dispose of the appellant's claim for damages against the respondents, William and Karen Davis, in that, although it disposed of the claim on the theory of

premises liability, it did not dispose of the claim on the alternative theory of negligent hiring and retention. As such, the judgment of the trial court was not final as to William and Karen, depriving us of jurisdiction as to the appellant's claim against them. And, as a result, *even if we were to find that the trial court's summary judgment completely disposed of the appellant's claim against Helen, given the fact that this case involved multiple defendants and the trial court failed to certify its judgment as to Helen under Rule 74.01(b), as being final for purposes of appeal, we would also have no final judgment on which to base our jurisdiction as to the appellant's appeal as to Helen.*

*Moreland,* 995 S.W.2d at 516 (citations omitted; emphasis added).

On March 30, 2000, the trial court entered an amended order granting summary judgment to Ms. Farren–Davis in which it again found that no genuine issue of material fact existed and that she was entitled to judgment as a matter of law. The court found that Ms. Farren–Davis owed no duty to Mr. Moreland and that no special relationship existed that would have imposed liability on Ms. Farren–Davis. Accordingly, the court entered a judgment in Ms. Farren–Davis' favor and against Mr. Moreland. It certified the judgment as final for purposes of appeal under Rule 74.01(b). Mr. Moreland now appeals.

## II. STANDARD OF REVIEW

On appeal from a summary judgment, we review the record in the light most favorable to the party against whom the judgment was entered. *ITT Commercial Finance v. Mid–Am. Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993); *Behlmann Pontiac GMC Truck, Inc. v. Harbin,* 6 S.W.3d 891, 892 (Mo.

banc 1999). Summary judgment is "proper when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Stanley v. City of Independence,* 995 S.W.2d 485, 486 (Mo. banc 1999). We review the legal issue before us *de novo,* as the "propriety of summary judgment is an issue of law." *Id.; Tuttle v. Muenks,* 21 S.W.3d 6, 8 (Mo.App. W.D.2000).

## III. LIABILITY OF LANDLORD OR EMPLOYER FOR CRIMINAL ACTS OF THIRD PARTY

On appeal, Mr. Moreland argues that an issue of fact exists as to whether Ms. Farren–Davis owed him a duty under the "special facts" or "special relationship" exceptions to the general rule precluding liability for the criminal acts of a third party, in that Ms. Farren–Davis knew of Mr. Gonzales' dangerous and violent propensities yet hired and retained Mr. Gonzales as an employee anyway. He argues that Ms. Farren–Davis increased the potential risk of physical harm to him and that she had a duty to protect him, her tenant, from foreseeable harm from Mr. Gonzales.

The record does show that it is disputed whether Ms. Farren–Davis knew that Mr. Gonzales was potentially violent and dangerous; whether he was still a tenant at 3932 Terrace at the time of the assault; whether there was a fence between that property and 3928 Terrace; whether the Davises managed 3932 Terrace while they lived at 3928 Terrace; and whether Ms. Farren–Davis had some control over the back yard of 3928 Terrace where the assault occurred, because she arranged for persons at 3932 Terrace to be able to park their cars there.

The existence of these facts does not preclude summary judgment in Ms. Farren–Davis' favor, however, because

even if all these issues were resolved in favor of Mr. Moreland, Ms. Farren–Davis would be entitled to summary judgment. Generally, in an action for negligence, the plaintiff must establish: "1) a duty on the part of the defendant to protect the plaintiff from injury, 2) failure of the defendant to perform that duty, and 3) injury to the plaintiff resulting from that failure." *Groce v. Kansas City Spirit, Inc.,* 925 S.W.2d 880, 884 (Mo.App. W.D.1996); *Claybon v. Midwest Petroleum Co.,* 819 S.W.2d 742, 744 (Mo.App. E.D.1991). Here, it is the *lack* of a duty owed that entitles Ms. Farren–Davis to summary judgment.

■ In determining whether Ms. Farren–Davis owed Mr. Moreland a duty to protect him from criminal acts of a third person, we note that, generally, the owner of a business property "has no duty to protect an invitee from a deliberate criminal attack by a third person." *Groce,* 925 S.W.2d at 884. Missouri recognizes two key exceptions to this general rule. As stated in *Groce,* the first exception, called the "special relationship" exception, allows the court to "impose liability if the plaintiff shows that a special relationship existed between the plaintiff and the defendant such that the plaintiff entrusted himself or herself to the protection of the defendant and relied upon the defendant to provide 'a place of safety.' " *Id.* The second major exception to the no-duty rule, often "referred to as the 'special facts and circumstances exception,' " *id.* at 885, can take on two different forms:

First, it is applied where "a person, known to be violent, is on the premises, or an individual is present who has acted in such a way as to indicate danger" and sufficient time exists to prevent injury. . . .

In the second situation, often referred to as the "violent crimes" exception, a

duty is imposed on a landowner for criminal attacks which *occur on his or her premises* if certain additional elements are present. First, there must exist some relationship between the plaintiff and the defendant which encourages the plaintiff to come on the premises. Second, the courts have required "prior specific incidents of violent crimes on the premises that are sufficiently numerous and recent to put a defendant on notice, either actual or constructive, that there is a likelihood third persons will endanger the safety of defendant's invitee." This means that the mere fact that crimes in general have occurred in an area or that a business is located in a "high crime" area provides an insufficient basis to invoke a duty. Finally, the incident causing the injury must be "sufficiently similar in type to the prior specific incidents occurring on the premises that a reasonable person would take precautions to protect his or her invitees against that type of activity."

*Id. See also Faheen, By and Through Hebron v. City Parking Corp.,* 734 S.W.2d 270, 272 (Mo.App. E.D.1987); *Claybon,* 819 S.W.2d at 744–45 (citations omitted; emphasis added).

■ Mr. Moreland does not clearly specify which of these exceptions he is arguing applies here or state why it applies. He cites cases that support imposing a duty on a landlord to protect those on his or her property from foreseeable attacks by third persons, but he fails to address the fact that none of these cases found a landlord liable for attacks occurring off of the landlord's premises. Thus, he has failed to show why the landlord-tenant relationship he has with Ms. Farren–Davis provides the kind of special relationship that would make her liable for an attack by a third party off of her prem-

ises. We thus conclude that the special relationship cases are not applicable.

■ Similarly, courts have traditionally applied the "special facts" exception only if an attack occurred *on* the premises of the defendant and certain other requirements were met. Only a single case, *Fincher v. Murphy*, 825 S.W.2d 890 (Mo.App. W.D. 1992), has imposed a duty on a defendant for a third party's criminal attack that occurred *off* of the defendant's premises. In *Fincher*, a former union president attacked union members on a public street outside the building that housed the union headquarters. At the time of the attack, the union was holding a highly contested election. The sidewalk in front of the union's building was being repaired, the lawn was in poor condition, and the parking lot was not finished. After the polls closed at 7:00 p.m., union members congregated outside of the union's building, on the street, where a "good deal of drinking" occurred. At trial, the jury found that, although the attack did not occur on the union's property, but on the street, the union was liable for the attack. *Id.* at 891–92. The union appealed.

On appeal, this Court held that "[i]t is not significant that the assault took place in the public street off the premises actually possessed by defendant union, so long as there was a sufficient connection between the union's activities and the action which resulted in the injury." *Id.* at 893. We reasoned that, at the time of the attack, the union was on notice of the "distinct possibility of violence during or in the wake of the election." *Id.* Accordingly, we held that the union's duty did not end at its property line. Rather, the union's duty extended to the adjacent areas where danger was likely to occur, for a *reasonable period* of time. *Id.*

*Fincher* is distinguishable from the instant case. *Fincher* dealt with a specific situation *created by* defendant, a situation that defendant could anticipate might result in violence for a *specific period of time.* Here, any alleged dangerousness of Mr. Gonzales was not created by Ms. Farren–Davis nor was it limited to a specific period of time. It was allegedly an ongoing danger, and it is conceded that "the attack resulting in [Mr. Moreland's] injuries occurred without any specific warning to [Ms. Farren–Davis]." Neither *Fincher* nor any other cited case supports imposing a duty in such a case, for, as Ms. Farren–Davis argues, "absent some precipitating event, there is no way to measure the 'reasonable period of time'" during which *Fincher* held some duty might exist to protect from a danger created by defendant.

For all of these reasons, we find that the trial court properly granted summary judgment on Mr. Moreland's claims against Ms. Farren–Davis based on her position as his landlord.

## IV. NEGLIGENT HIRING AND RETENTION

■ In Point Relied On II, Mr. Moreland argues that the trial court erred in failing to address his claim that Ms. Farren–Davis was negligent in hiring Mr. Gonzales and that summary judgment was not proper on this theory. Mr. Moreland does not offer a substantial argument in support of the claim that he asserted such a theory and that the court failed to rule on it. It would be difficult to do so, for the Petition does not plead that Ms. Farren–Davis was negligent in hiring and retaining Mr. Gonzales. Rather, Mr. Moreland's Petition and First Amended Petition pled that Mr. Gonzales "at all times relevant hereto was an employee of the defendants

William Davis and Karen Davis."[1] Because Mr. Moreland never pled that Mr. Gonzales was an employee of Ms. Farren–Davis, Mr. Moreland cannot now claim that she was negligent in hiring and retaining Mr. Gonzales as an employee. *See J.H. Cosgrove Contractors, Inc. v. Kaster,* 851 S.W.2d 794, 798 (Mo.App. W.D.1993); *Morris v. Brown,* 941 S.W.2d 835, 839 (Mo.App. W.D.1997).

For all these reasons, we affirm.

SMART and HOWARD, JJ., concur.

---

1. The Petition did conclusorily assert that Ms. Farren–Davis should be jointly liable for negligent hiring, but in the absence of pleading that she was in fact an employer of Mr. Gonzales, this fails to state a claim.